Our next case is Lau v. Kay. Ms. McGill, do you have some student counsel for us today? Yes, Your Honor. Good morning. My name is Lori Alvino-McGill. I'm from the Appellate Litigation Clinic at the University of Virginia School of Law. And I'd like to introduce two of my students this morning, Madeline Forbes and Margaret Fox, who will argue as amicus in support of the appellant, Mr. Kay. All right. We're glad to have them. I assume Ms. Forbes is going to do the opening and Ms. Fox the rebuttal? That is correct. All right. Ms. Forbes, we're glad to hear from you. Good morning, and may it please the Court, Madeline Forbes, amicus curiae in support of defendant appellant Bin Kay. Plaintiff's complaint alleged that Kay took $400,000 from her without any authorization and that she was unaware of Kay's taking for nearly nine months. Plaintiff suddenly claimed for the first time at trial, however, that she was aware of and actually authorized the transfer of the funds at issue, but based solely on the condition that the parties would get married. Plaintiff alleges in its briefing that there was no shift in theory during litigation. But a comparison of the allegations in her complaint to those at trial demonstrates the seismic shift that culminated in a novel factual theory against Kay. Rather than amend her pleadings prior to trial, plaintiff instead attempted to amend for the first time during trial. And in permitting her to proceed at trial with this novel theory, the district court abused its discretion in violation of Rule 15b, grounds upon which this court should vacate the district court's judgment and remand for further proceedings. So counsel, you talked about 15b. Are you talking about 15b-1 or b-2? Your Honor, we are addressing both 15b-1 and 15b-2 because neither provision permitted amendment in this instance. If we begin with 15b-1, there, amendment is only permitted once a party has objected, if that party will not be prejudiced. Here, the record demonstrates that Kay sufficiently objected. He said, in the testimony, they changed to say the transfer was authorized, but it's based on some attachment to my house. I've never heard that before. He said, Your Honor, if it's not about unauthorized, what's this claim? They failed to state their main legal claim. Pro se litigants, as this court has recognized, are entitled to have their objections construed liberally. And for this reason, Kay did not need to use any magic words like prejudice or even... How much slack do we cut Mr. Key here as a pro se litigant? We often get pro se litigants who are impoverished or, for other reasons, aren't able to obtain counsel. But it looks like on the record here, Mr. Key is a person of some means, and he made a calculated decision that the lawyers he talked to were just too expensive. So it seems like he made a very clear economic decision that he was going to proceed without a lawyer. And so there were some mistakes made. Why does he get a do-over when he's made this choice? Your Honor, it's almost as if he didn't have a choice. The lawyers available to him, he stated to the court, were too expensive for him. And he did choose to proceed pro se, but under this court's precedent, it's expressly recognized the leeway that is to be afforded to pro se litigants. And one such leeway is construing their objections liberally. Now, I agree that they... So are you arguing that this was a constructive amendment of the complaint at trial? Yes, Your Honor. It was a constructive amendment that was not permitted under Rule 15b. Just to return to 15b-1 for an instant, because Key objected, amendment was only allowed to proceed if there would be no prejudice to him. And while there is little precedent on 15b in this court, there is much on 15a to show that had this amendment been sought before trial, it would have certainly been found to be prejudicial. So the fact that it arose during trial should lead this court to believe that it was more incredibly prejudicial. You seem to argue in your briefs that there was a sui sponte duty on behalf of the district court to construe Mr. Key's comments as an objection and to fulfill the requirements of Rule 15, but I'm not aware of any case that imposes that duty on the district court. Your Honor, it's not a duty...  It was merely that in allowing the amendment to proceed in violation of Rule 15b, in order to prevent the ultimate due process violation that occurred here, the court should have taken it upon itself to order a continuance. Counsel, can I follow up on Judge Agee's question and Judge Thacker's question? I understand, I think, your argument that your client effectively objected, and we can look at that issue, but just hypothetically assume we don't agree that he objected. And this question is just trying to figure out what happens then. If he did not object and the evidence presented is outside the pleadings, what happens under the rule then? Your Honor, what happens then is we move to Rule 15b-2. If you do not find that he objected, it would be effectively finding that he consented. We do not agree that he consented expressly or impliedly, but regardless, under Rule 15b-2... Consented to what? A motion to amend that Appellee never made? Appellee never sought to amend, correct? She never sought formally, but Rule 15b seems to contemplate that no motion would be required if there is consent that the pleadings are effectively constructively amended. But regardless of whether B-1 or B-2 is applied, what was required at the end of the day was that there be no prejudice. So even if this Court does not believe that he objected sufficiently and looks to consent under B-2, amendment was nevertheless not allowed. Again, this Court seems to... So that's... I'm just trying to... I think you have a good argument that he didn't consent, although we'll hear from the other side on that, and you have an argument that he didn't object. I'm wondering, though, whether... If he didn't object, is the effect of that that District Court has to be aware of what the pleadings say and whether the evidence submitted is outside that and bring this issue up on its own? Because if we rule for you, we're saying, I think, in effect, the District Court did something wrong, and I fully get it if you objected. But if you didn't object, it feels like the District Court has some sort of roving duty to be comparing that, and that seems like a tall order to place on District Courts. Does that make sense? Do you understand what I'm saying? I understand your question, Your Honor. And it is important here to, again, emphasize that we do believe he consented, so we do not believe... You mean he objected. That he objected, excuse me. That's okay. But B-1 and B-2 draw a dichotomy between objection and consent, where B-2 contemplates implied consent, but you can't even find it here. Didn't, during the jury charge, didn't appellate actually specifically address the court and say, I've been fighting all these things the whole year, but to my surprise, during the plaintiff's testimony yesterday, she said that's authorized, so she changed a major claim. Isn't that bringing it to the attention of the court? Yes, Your Honor, that's further evidence. Exactly, not just in his testimony or closing argument or opening statement, even though he said it there, too. Yes, Your Honor, exactly. That is further evidence of his objections to plaintiff's amendment during trial. Counsel, following up on that, I mean, not only did he bring it up, the District Court there, I think, said, well, that only applies to conversion, but that same position he made it would apply to the remaining calls of actions, too, wouldn't they? Correct, Your Honor, they would. In other words, if that is sufficiently bringing to the court's attention, I don't know how that answer would be correct. Correct, Your Honor, the District Court's proceeding was an abuse of discretion, given that neither of these provisions were satisfied, certainly that he attempted to object and bring to the court his inability and unpreparedness to continue, given these new allegations. How do the evidentiary rulings fit into your argument? Because, yeah, I've looked at those and, you know, let me just say I find it hard to see how at least the rulings on, I think, Exhibits A and B aren't, you know, don't, I see problems with those rulings, let me just say that. How do those evidentiary rulings impact what we're doing? Your Honor, we mentioned the evidentiary hearings for two reasons. First, we wanted to bring to this court's attention that after the Rule 15B violation and after the due process violation had been cemented, there were concrete innate powers that the District Court possessed, such that it could have helped Kay make up some of that ground that he lost, given that the theory of the case changed underneath his feet at trial. And so that's why we mentioned that many of these pieces of evidence are easily admitted under many of the exemptions to hearsay. Why don't you just say that was an error and it was reversible, just on the evidentiary rulings alone? It doesn't seem like you come out and say it that way. Maybe you're saying it in so many words. Is that your view? Yes, Your Honor, that was my second point, is that those are sufficient grounds for this court to reverse what occurred below. But again, the evidentiary issues that occurred here— Even if we assume you're right, and you may well be, what's our authority to consider the evidentiary questions now? There was no objection. There was a lot of discussion about evidentiary rulings, but how was the District Court on notice that it was supposed to correct its rulings? Your Honor, that would require a plain error standard of review, and we do believe that Key can still satisfy this standard of review. Well, it may require fundamental error as opposed to plain error, based on the status of the case. And that's kind of what we're grappling with here, is that you've got some very legitimate issues, but we're grappling with— and maybe Judge Quattlebaum is the one who asked this— how do we say that what the District Court did was wrong if we're going to reverse it? Your Honor— On the evidentiary issues. Your Honor, I think the narrowest option for this court to reverse is to find that there was a 15B violation that amounted to an abuse of discretion. There are additional evidentiary issues, and there was an ultimate due process violation, but it's sufficient for this court to find reversible error alone in the 15B violation. And for that reason, we ask that this court vacate the District Court's judgment and remand for further proceedings. Thank you. All right. Thank you very much, Mr. Chang. We'll hear from you now. Mr. Chang is on mute. I apologize, Your Honor. Good morning, Your Honor. On behalf of Ms. Lai, I'm representing the appellee. Your Honor, I want to address several issues. Can you hear me? It looks like I need to speak a little bit louder. I apologize. It looks like I need to address several issues. The first issue I want to address is the stand-up review. It looks like the opposing counsel said lots of words about abusing of power, due process violation. All those under the Fourth Circuit precedent, the stand-up review should be abuse of discretion instead of the review standard they requested in their brief. They asked for de novo review. What was your breach of contract theory at trial? Your Honor, this goes to the breach of contract. Your Honor, the breach of contract is that whether they have some kind of oral agreement regarding the fund transfer. So from the get-go, we know this is a tantamount case. Based on what? What was your breach of contract theory at trial? The breach of contract theory is that there is a certain kind of agreement among those about how the funds can be used, what's the purpose of the funds. So what was the breach of contract theory that was pled? Not what you raised at trial. What did you plead? What I plead is that the breach of contract is that breach her confidence and breach his confidence on him, and therefore the fund transfer was not authorized. That's what I plead in the breach of contract claim. And that's not what you, that's not the theory you went to trial on, is it? That is not the argument I made during the trial, yes, Your Honor. But does that work in the other side's favor? Look, so what I did is, you know, the plaintiff concedes a key dispute. All right, so you agree you changed the theory at trial? No, no theory was changed. The question remained the same. Well, you said that, well, what contract was, did you argue, was breached at trial? The contract was breached at trial is that what was basically, fundamentally, was the fund was full. No way. Didn't you argue at trial that she paid off his mortgage because they were supposed to get married, and since they didn't get married, he needs to give her the money back? Is that what you argued at trial? Yes, yes, I did. Okay, so where is that in your complaint? It's not in there, Your Honor. Okay, so the theory did change at trial. In fact, not only did it change, your appellant admitted at trial that the funds that the complaint asserts were unauthorized were in fact authorized. Correct? Well, appellee admitted that. I'm sorry, appellee admitted that. Thank you, Judge Agee. I think we made concession about what the funds were. Actually, that was not the… and those were unauthorized. There's no mention that I'm aware of anywhere in the pleadings or in any of the pretrial discovery of this oral contract for marriage. I mean, is there someplace you can point me to in the record where we would find that? No, there was not, Your Honor. You are correct. All right. It looks like to me we have to start with that there was an amendment that's cognizable for purposes of Rule 15b-1. So what are we supposed to do at that point? Well, Your Honor, I think at that point, there are several ways to do that, right? The court, he can make an objection, and then he can ask for continues, and at that time, probably the court will give it to him. Also, I wonder… Right. If he would have had a lawyer, all those things might have been done. But he obviously told the district court, hey, look, this is completely different from anything that I've seen before. I mean, he didn't ask for a continuance, and that was a mistake on his part. But it's clear he alerted the district court that this is a new ballgame. I don't know where this is coming from. Yes, Your Honor. Yes, he did. But, you know, again, as he pointed out earlier, the court afforded him, advised him, again and again, he's entitled to counsel assistance. And then he chooses to represent himself. And then if he did object to it… Well, he should also be entitled to a fair trial, and that opposing counsel and appellee won't change the theory in the middle of trial. Again, Your Honor… To back to Judge Agee's question, since assuming that the complaint was constructively amended at trial, what are we to do with that? Well, I think what happens next is that the court allows the trial to continue, and then he has the equal opportunity to present his own evidence. And I do believe that my concession actually works in his favor. He won the fraud claim, and then he probably won the other two claims too. Wait a minute, wait a minute, wait a minute. Judge Bottlebaum's got a question first, so let him ask it and then you answer it. Yes, Your Honor. So I appreciate your answer that you say this may have helped him or not harmed him, but this is a very specific question. Do you have a position on whether Mr. Kaye's objected to the amendment of the pleadings? Your Honor, could you repeat it one more time? I'm trying to re-understand your question. I apologize. That's okay. Your opposing counsel says that his conduct was enough to amount to an objection to you using this new theory at trial. Do you have a response to that? Yes, I do, Your Honor. I think if, let's say, I don't believe I had a new theory, but let's say I did. I don't think it in any way prejudiced him. Actually, it made his case stronger. He could have come up much stronger with the… Could I interrupt you? I understand your prejudice argument. What I'm really trying to get at is do you have a position based on the way Mr. Kaye responded to the way the trial went, whether he objected or not? I mean, he might not have used the words objected, but as Judge Thacker said, he questioned some jury charges. He tried to do a second opening statement. He expressed confusion. Is that an objection or is it not an objection? Tell us why, using any cases that you have that help you. I don't think it amounts to an objection. Objection would be very clear to the court that I don't want to proceed. I need more time. I need more preparation. He just acted confused. I mean, I don't blame him, but I don't hear any objection. And I don't know at that point the posture of the court, what the court needs to do. So the argument is that the court should stop the case voluntarily and give him more time. So it looks like the other side is arguing the court should, on behalf of him, as his counsel, but at the same time make a ruling. Judge Thacker, did you have a question too? I don't think so right now. Okay. Well, actually I do. Doesn't the court have an obligation to ensure a fair trial? Yes, Your Honor. May I continue, Your Honor? Yes, go right ahead. Yes, so I think, let me go back to what happened that day, probably make things much more clear. So at that day, I volunteered dismissed two of the complaints, the conversion claims, the conversion, the breach of fiduciary duty. And then the judge, Davis, asked him whether he consented to that or not. He said yes. So two of the claims are gone. With those two claims are gone, then at that point, the plaintiff decided there's no point to continue to argue whether there's a consented transfer or not. Because both sides support that there was a transfer. So the only thing we need to find out during the trial is that was there a relationship or what's the money for? And this is the open field. He can argue that the money is for the dating expense. They can argue that money is for, you know, they can make a common donation. I mean, the court does not in any way, in any way, prevent him to arguing to put on his new case. He still can put on his defense and he still ought to have all the... The discovery and the pleadings, particularly the motion for summary judgment and everything leading up to the trial had nothing to do with what you're talking about now and what you, what your theory was at trial. So how is it not prejudiced, prejudicial to appellant to have to defend against a whole new theory? I don't see how that helps him, as you say. Your Honor, if you say he's prejudicial, I don't believe so because you still have all the options. Actually, as I said before, I think my concession or all concessions made a case stronger, right? But again... I know you say that. You say that, but I don't think he agreed with that. And if you would stop talking when I'm talking, that would be helpful for me. Thank you, Your Honor. I apologize. I lost my train of thought. Go ahead. Well, I mean, then I need to ask my own one question. What could I do at that point? You know, the trial... You could have made a motion to amend, because that's what you were doing, was amending the complaint. So you could have made a motion to amend, and then the court would have taken the proper steps to determine whether your motion would be granted or not, and whether a continuance was warranted at that time. Yes, Your Honor. I apologize. I did not do that. And at that time, I think the court is ready. Everybody's ready. My witness is ready. She's ready. So we proceed. Not everybody's ready because the appellant wasn't ready. The appellant was ready for the prior theory. The appellant wasn't ready for the new theory. That's my point. Your Honor, if we could go back to the time he made the objection, and the court granted continuance, and asked us to amend the complaint and come back with a new trial, I would agree to that, too, Your Honor. Right. I think that is perhaps your strongest point, is that there wasn't a clear objection. Hold on a second. Say what you just said, I guess, Mr. Chang. Did you just say you were consenting to sending it back for a new trial? I just didn't understand what you said. Your Honor, I apologize. I probably confused you. I said that if we could go back to time, and then he made the objection, he wanted to have time to continue the case, he wants the case to be continued, and we come back on a new date, a new court date, which on the Eastern District, which is very strict about the trial date, and there's no change of trial date, then I would agree. I think I would agree that, yes, we could come back another day, but at that time, we are, I think, both sides under the pressure that the case has to go forward. So I go forward with the case. Well, so following up on Judge Agee's point, if we find that he did sufficiently object by bringing this to the court's attention multiple times, then you would agree it should go back for a new trial? If you order that, yes, Your Honor. No problem. Okay. But again, I agree that, you know, if he entitled to— But you don't, you just don't agree that he sufficiently objected, correct? I don't think he objected. I don't think the court should play the role both on his behalf and be a judge. I don't believe that in this entire process, he's being prejudiced in any way. I think he presented a strong case. He won on the fraud claim. Actually, he won because of all concession. So I think, if you get a sense, I think we were at—when the trial started, because of all concession, we are actually at a weaker position than we began with the case. But, you know, there's no idea, Your Honor. If we could go back and everything can be done the proper way, then I would like to do it, too, Your Honor. All right. Let me shift before your time runs out. I had a couple of questions about some of the evidentiary rulings of the district court. Yes, Your Honor. Apparently, there was a joint stipulation of facts. Is that correct? Yes, that's one, Your Honor. But the district court excluded that and said it was cumulative. That's the first time I've heard of a joint stipulation of facts being excluded from evidence. So help me understand why that was appropriate. Your Honor, the answer is I don't know. I think at the time he wanted to present that, the judge ruled that that's not necessary. There's other evidence both parties can present it. And also that I don't remember clearly under what circumstances we have that joint stipulation, but I think the court would rather hear the raw evidence or testimony from both sides. So they decided not to use that pre-agreed stipulation, which could work in his or my favor either way. But he said it's working in his favor, but I will argue it could work in my favor, too. There were some texts that were excluded where Mr. Key says, you gave me a very generous gift, and your client says, don't mention it, I hope you're happy. There's nothing in that or these other text exchanges that says anything about a marriage contract or changing title to the house. I mean, those would appear on their face to be party admissions against interest and admissible as an exception to the hearsay rule. Am I missing something there? Yeah, exactly correct, Your Honor. So you're agreeing the district court erred when it excluded those texts? I think I object on the hearsay rule and the court rule against him. I understand that that's what happened. What I'm asking you now is whether the district court made an error when it did that. I think you are correct, Your Honor. Yeah, he did. Yes, he did. Okay. All right. Well, you've got a couple minutes left. What else would you like to tell us? Your Honor, and also based on the district court precedence, I don't believe there's any due process violation. The thing I really want to say is that we are living in—this case went on for a long period of time. My client is totally stressed out. And this case is about marriage, and basically it's about a relationship, right? Whether there's a relationship or not. And it's up to both sides to present evidence to the court that there's a relationship. What is the money for? What's the money being transferred? Authorized or unauthorized? What's the purpose of the money, right? And then the court will make a determination. So there are three remaining claims. The defendant won one of them. I won two of them. And the jury issued a verdict. I think after the jury heard the entire story, jury reached a verdict. Both sides' story was wrong. You said you won two. I thought breach of contract was wrong. Well, now I apologize. I could've won two. The jury come back with a question whether after they give my client the verdict for the breach of contract, whether they need to continue to rule on the unjust enrichment claim, and the court says you do not need to, that probably, if that be appealed, probably that's not— But the jury only returned a verdict on breach of contract. Yes, Your Honor, that's correct. So I think the jury heard the entire case and issued a verdict, and we respectfully request the court to appeal the jury verdict. Thank you so much, Your Honor. All right, thank you very much. We'll now hear Ms. Foxen-Rebo. Good morning, Your Honors, and may it please the court. Margaret Fox, amicus on behalf of Appellant Mr. Keefe. Opposing counsel wants you to think that Mr. Keefe was on notice of the core claim against him, but the facts alleged in the complaint and the facts stated at trial— again, the central premise of liability here—could not both be true. Well, let's just assume we agree with you on that. What are we supposed to do now? Well, Your Honor, first we would address the harm that was done to Mr. Keefe by this change. Opposing counsel claims that there is no prejudice here, but he fails to grapple with the central premise that Mr. Keefe was entitled to know the core claim against him and be given a sufficient factual framework to guide his discovery. Here, Mr. Keefe— Obviously, he wasn't ready to proceed with that. But, you know, in the ordinary course, lawyers are making objections. They're telling the district court, this is an error. Here's what we need to do. And we're having to kind of read between the lines for that. Somebody's going to have to write an order or an opinion saying what to do. And so now what's what I'm asking you? How are we supposed to go about doing that? Yes, Your Honor. We believe, again, the easiest way to resolve this case is as an abuse of discretion under Rule 15. Rule 15b explicitly provides the process for amendment during trial. Now, there's been some discussion today about the duty of the district court here. Simply, the district court had a duty to follow the procedures of 15b-1 and 15b-2. If neither of those provisions can be met, plaintiffs should not have been allowed to proceed. What's your best case in a pro se situation where there's a reversal under Rule 15? Your Honor, we do not have a case on point for a pro se under Rule 15. But central components of this court's case law, both under 15a and in its case law for pro se litigants, show us that this was a reasonable example of an objection and that this was a clearly prejudicial amendment under Rule 15. First, as a pro se party, we know that Mr. Key was entitled to have his objections construed liberally. This court has long acknowledged that pro se litigants are entitled to more latitude. And this was even acknowledged by the trial court itself in its motion for summary judgment and engaged trial. Let's say we agree with you on that, at least in theory. But, you know, when we're issuing opinions, we're obviously resolving the case before us, but they have an implication for a lot of other things. So it sounds like to me, under your theory, we would be telling district courts for the first time whenever they have these cases that they have this sui sponte duty to, in effect, act as counsel for the pro se litigant, which I think would come as a surprise to a number of the district court judges. Do you see the dilemma that we have in trying to make a resolution? Absolutely, Your Honor. But I think that the context here is important and that the district court was not raising this completely sui sponte. Again, Mr. Key raised his objection at several points during this trial. You can see this at the start of the second day of trial, at the beginning of his case in chief, during his own testimony. When you say at the start of the second day of trial, what did he say at the start of the second day of trial? I believe this is when they're discussing, you know, he's trying to start his case in chief, and I believe he begins by he's making what appears to be an opening statement. It says that he's doing that because he was ambushed with this completely new theory. Okay, so that's the opening statement, and then he says something similar in the closing statement. And I raised earlier that he pointed out the issue directly to the court during the jury instruction charge. Were there other places where you would contend he directly raised the issue to the court as opposed to the jury? Yes, Your Honor, we had citations in the joint appendix at pages 204, which again is the start of the second day of trial. Is that his opening statement? No, Your Honor, I believe 204 was his opening statement. Then again, in the beginning of his own case in chief, that's at 208, in his testimony. He said something to the court there, directly to the court? Yes, Your Honor. Okay. Again, in his own testimony, joint appendix 239, and in his closing at joint appendix 256. Closing is to the jury. I was just asking about when he was directly addressing the court. Yes, Your Honor. So it sounds like you're saying during the jury instruction charge and his testimony? Yes, and then there was some discussion again at the start of the second day of trial. I cannot remember the context off the top of my head, but that's around 204 in the joint appendix. But again, we would contend that at all of these points, Mr. Key was making a proper objection under 15b1. The district court did not have to raise the objection themselves when under b1, Mr. Key raised the objection. Or under b2, he clearly did not give any kind of consent to this. I understand that there is some difficulty in writing this opinion. But ultimately, Your Honors, this case should be reversed and remanded for a new trial. The theory was changed in the middle of trial, and after repeated objections by a pro se litigant, the trial judge decided to continue on an unpledged prejudicial theory. This was an abuse of discretion under Rule 15. Okay, yeah. And just to confirm, on JA204, what you were talking about is when Mr. Key approaches the bench, they're arguing about evidence, I think, and he approaches the bench and says, I've been fighting this whole thing, and to my surprise, they changed the testimony, they changed the theory yesterday, basically something like that. Yes, Your Honor, that is one of the citations we have for his objection. All right, thank you very much, Ms. Fox. I want to convey on behalf of the court to you and to Ms. Forbes the court's appreciation for undertaking representation in this case and compliment all counsel on their arguments. We're going to take it under advisement, and unless my colleagues would like to take a break, we're now going to move to our last case here in about a minute. Thank you so much, Your Honors, and have a great day, stay warm, stay healthy, see you next time. Thank you. All right, thank you very much. This hearing will take a brief recess.
judges: G. Steven Agee, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.